IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KLAUBER BROTHERS, INC.**, <br><br> Plaintiff, <br><br> ~ *versus* ~ <br><br> **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A**, <br><br> Defendants. | Case No. `1:23-cv-10407` <br><br> **District Judge** Thomas M. Durkin |

**AFFIDAVIT OF SANDY WONG FOR BF CONCEPT LIMITED
IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
AND IN SUPPORT OF BOND**

| | |
|---|---|
| **SPECIAL ADMINISTRATIVE REGION** <br> **OF HONG KONG** <br><br> **PEOPLE'S REPUBLIC OF CHINA** | ) <br> ) *ss*. <br> ) <br> ) |

**TO THE HONORABLE COURT:**

       My name is Sik Yan Wong (I sometimes go by "Sandy Wong" in English) and I affirm the truth of what I write below on the basis of my personal knowledge and under the penalties of perjury:

A. **INTRODUCTION**
**Who I am, Role of this Affidavit, and Other Preliminaries**

1. I am above the age of 18 and a full-time citizen and resident of the Special Administrative Region of Hong Kong in the People's Republic of China.

2. I am the co-manager and co-owner of BF Concept Limited which has been identified as a Defendant in this lawsuit.

3. I understand that the Plaintiff moved for a Preliminary Injunction asking that they be allowed to freeze and seize BF Concept Limited's American-dollar bank accounts and to stop BF Concept Limited's ability to sell items on the Amazon third-party seller platform.

4. I respectfully submit this Affidavit in Opposition to the Plaintiff's Motion for a Preliminary Injunction and – if the Court were inclined to grant the Preliminary Injunction – that the Court impose an appropriate bond to reflect the actual damages that BF Concept Limited has and will suffer as a direct consequence of the injunction.

5. Were it physically possible for me to attend the hearing that will take place this Wednesday in Chicago, I would do so, but the short time period between when I was informed of the hearing, the practicalities of international travel (including the time to obtain a Visa to enter the United States) and personal responsibilities makes my physical attendance impossible.

6. Respectfully consider this Affidavit to be the testimony that I would provide were I physically able to attend the hearing in Chicago. Of course, I remain available to testify by Zoom or other means.

7. I understand that this is a hearing on the preliminary injunction and not a full trial on the merits. Therefore and at the direction of my counsel, I have focused this Affidavit

on the claim that the lace socks we allegedly sold somehow violated Plaintiff's copyright, and on the damages that would be occasioned in the event that a Preliminary Injunction were ordered.

8. I read and write the English language fluently. This Affidavit was prepared in concert with our Counsel, but the substance of the allegations that I make here are true and accurate based on information that I personally know and I can confirm that I have personally read, carefully edited, and that I personally am hereby testifying to every factual allegation made here.

### B. ALLEGED INFRINGEMENT
**What Plaintiff Claims We Infringed**

9. I am informed that the papers in support of this Motion remain under seal and the papers in the link that the Plaintiff sent me by e-mail do not contain the factual basis for this Motion.

10. Plaintiff has told us through Counsel – again, I am informed this is not on the record – that the basis for the claim is that Plaintiff holds the Copyright to extremely rudimentary, commonplace, standard and generic "Design 7010":



Illustration 1 –   Subject Design No. 7010, Declaration of Mark Klauber at p. 2 (ECF 5-2) purportedly registered as U.S. Copyright Registration No. VA 180-563

11.   I am informed that in this Court, standard elements in a genre are referred to as scènes à faire, which are entitled to no copyright protection.

12.   I am an expert in clothing design and lace patterns. Based on my knowledge and experience, I can confirm that each element in design 7010 including the flowers, cuticles, its forms and shapes are all rudimentary, commonplace and standard.

13.   The alleged violation by BF Concept Limited is obscure but seems to refer to the Amazon Standard Identification Number (ASIN) B06XXC8LZL, which is listed as item 147 on a list included in the Complaint.

14.   That takes you a page that shows a product as follows:



Illustration 2 –   Product picture at ASIN B06XXC8LZL (Exhibit A)

15.   I do not see anything in this picture that could possibly be claimed as a violation of design 7010.

16. Since then, Counsel for the Plaintiff told my Counsel that the violation is not from the product but from the neck of the socks shown in the product description as follows:



Illustration 3 – Product description picture of ASIN B06XXC8LZL (Exhibit A)

17. Counsel for Plaintiff also provided my client the following comparison:



Illustration 4 – "Kilofly Comparison" provided by Plaintiff's Counsel (Exhibit B)

18. While cryptic, the "Kilofly Comparison" appears to compare three elements of Design 7010 with three elements in the neck of the socks shown at the product description.

19. This is entirely bogus.

C. **THERE IS NO INFRINGEMENT**

20. I have provided my Counsel the item shown in the product description and urge the Court to examine the fabric carefully. To help, here is a roadmap:

21. This is a clear picture of Design 7010 and the allegedly infringing design:



Illustration 5 – The Allegedly Infringing Design



Illustration 6 – Subject Design No. 7010

22. We will go through the alleged three "copied" elements below. But before we do so, we urge the Court to linger on the full context and impression of the designs. Plainly, there is no infringement. None. Certainly not at a "likelihood of success" level.

23. Turning to the three "copied" elements highlighted by the Plaintiff.

      **i.     Yellow Circle**

24. Here is a side-by-side comparison of the two items circled in Yellow:

 

    Primary Element of Design 7010                      Alleged Copied Element

25. The Plaintiff's Design appears to be a single open flower looked down from above with splayed petals. The flower contains three stamen and a few petals from a side view. The petals are surrounded by a thick border, surrounding a transparent layer. The petals themselves are of medium thickness. The bottom is a single thick border and hanging bells.

26. I understand that the Plaintiff will bring samples of Design 7010 and I respectfully urge the Court to examine them carefully.

27. By contrast, the allegedly infringing design appears to be three separate myrtle sprigs or flowers from a side profile. There is no border but rather the petals/leaves themselves have a thick edge and are fully opaque.

28. The bottom edge is unrelated to the three sprigs, but rather a trilinear border with transparent bands between its lines. There are no hanging bells.

29. The items highlighted in the Yellow circle have *nothing in common.*

    ii.   **Blue Circle**

  30.  Here is a side-by-side comparison of the two items circled in Blue:

 

Secondary Element of Design 7010            Alleged Copied Element

  31.  The Plaintiff's Design appears to be a profile view of an open flower in the same style as the primary element. It includes a translucent border, followed by a thick line, followed by the three-stamen theme from the primary element. It contains a few rounded leaves sticking out from the bottom and no stem.

  32.  By contrast, the alleged copied element appears to be a sprig or a tree branch with five opaque leaves protruding from a thick stem.

  33.  These elements have nothing in common whatsoever.

    iii.   **Green Circle**

  34.  Here is a side-by-side comparison of the two items circled in Green:

 

Tertiary Element of Design 7010            Alleged Copied Element

  35.  The Plaintiff's design is a complex border with a smooth edge that includes an angel or flower theme containing five lobes with three of those lobes protruding from the outside

edge of the fabric. The design includes a large scoop/wing emanating from each side and a diversity of opaque and transparent material.

36. By contrast, the alleged copied element is a lined border, interspersed with occasional flower. The edge and flower are raw edged and entirely transparent/opaque. While the flower element from our design also five lobes, from a stylistic perspective they have nothing in common with the five lobes in the Plaintiff's design. In our design, the edge is two lobes and the other lobes three point down like a fleur de lis; and are thick throughout. Other than containing five lobes, the small part of the Plaintiff's design has nothing in common with ours.

37. In summary, from a high-level perspective, there is nothing in common between the designs. And when each of the three highlighted elements are investigated individually none show any commonality between the Plaintiff's design and the alleged copied design. And nothing in the close review accumulates to create some overall "impression" of a copy or similar design.

38. There was simply no infringement.

39. I would like to take the opportunity to further highlight that the material used by us was purchased on the open market and as far as I know neither our company nor the seller have ever heard of Klauber Brothers, Inc. or their designs. Even assuming that there is any element of our design that is similar to Plaintiff's – there isn't – any such element is just a generic scène à faire, that are generic elements in the lace design industry for hundreds of years.

D. **THE BOND**

40. We suffered substantial damages from the issuance of the Temporary Restraining Order and respectfully ask that the Court release the current bond in full to us to compensate us for the damages caused by the wrongly-issued TRO, as well as an additional $179,000.00 as calculated below.

41. Even if this Honorable Court were inclined to grant the Preliminary Injunction, we ask that Plaintiff submit a bond in the amount of $3,650,000.00 to cover our damages when it is finally determined that the Preliminary Injunction was improperly issued.

E. **THE QUANTUM OF DAMAGES**

42. Cash flow is the equivalent of blood to a huge many body; or water to a manufacturing plant. Turn off the flow and the body die and the manufacturing plant will stop.

43. That's what happened here. When the Plaintiff wrongly obtained an injunction, it froze $34,100.00 held in our U.S. Dollar Accounts, and which have remained frozen for weeks; and have prevented us from selling product.

44. Each month we have overhead necessary to continue operations. Some of the major expenses are charted here:

| Major Expense | Monthly Amount |
|---|---|
| Restocking Fees | $20,500.00 |
| Logistic Fees | $4,700 |
| Employees | $6,125.00 |
| Rental | $2,700.00 |

45. Without the necessary funds to operate normally we have been locked up, immobilized, helpless and vulnerable. We have lost a month of income.

46. How much is that? Our average Amazon payment (normally made on a 14 day rolling basis) reflects the amount that we sold net of Amazon fees, storage fees, marketing fees, and other expenses. That net amount is on average $22,000.00 every two weeks.

47. For the four (4) weeks that we have been subject to the wrongly-issued Temporary Restraining Order, **we lost $44,000.00 in income**.

48. But that's not all. Un-freezing a business on Amazon that has been locked for four weeks is not like flipping a light switch where you just "turn back on the business".

49. As a consequence of the wrong-issued temporary restraining order, we are caught in a vicious cycle that will take at least three months to recover from.

50. Here's how that vicious cycle is playing out: In preparation for the high season, businesses such as ours normally stock up on product that they expect to sell over the Thanksgiving, pre-Christmas and post-Christmas shopping seasons.

51. **We cannot stock up for the Christmas Season because of the injunction**. We do not have the liquidity (because the funds are frozen) to purchase product, to ship product to the warehouse in the United States and to get our store ready for the high season.

52. Even if the Court were to release the injunction at the hearing on the 25th, we estimate that it will take between $25,000.00 in $50,000.00 in expenses to catch up on crucial lost time, which include higher shipping expenses, late product purchases, and other fees necessary to put us in the same position we would have been had the TRO not been wrongly imposed.

53. The long-term damage is also very large. Were we to attempt to sell our very successful Amazon store (which would normally be 60 x monthly profit – so in our case, 2.1 million dollars) the pricing would be reduced between 75-90% or even more while the wrongly-issued injunction remains in place.

54. **Even were the TRO immediately released, I am informed that the value of our store with the "cloud" of alleged infringement on the public record, would reduce its value by between 10-25%,** because there will be permanent damage to our "account health" and our listing rankings by Amazon, which is crucial to closing sales on the open Amazon market.

55. The economic damage caused by our employees not being paid – and potentially leaving after years of experience and knowledge of the store – is also very large. We are working on retaining an expert to provide that valuation.

56. To summarize: At the least, the actual damages that we have already suffered as a direct result of the wrongly issued TRO is at the low end as follows;

| Line Item | Description and Calculation | Minimum Amount of Damages |
|---|---|---|
| Loss Income | Two weeks of Amazon payouts, which are normally $22,000.00 | $44,000.00 |
| Recovery Fees | Late shipping, stocking fees, and higher cost of product for Christmas Season. Cost between 25-50K. We used the lower number to be conservative. | $25,000.00 |
| Damage to Value of Store | Even if Reinstated, long-term damage to account health and listing ranking 10-25% lower store value. Value displayed is based on conservative estimate of 10% lower value on a 60 x monthly net valuation basis. | $210,000.00 |
| Other damages | Employees with experience leaving, reputational damages, disruption to supplier and customer relationships To be valued by Expert. | $0.00 |
| | Total: | *Not less than* **$279,000.00** |

57. If the Court were inclined to issue a Preliminary Injunction, I am informed that the Plaintiff is required to post a bond that would cover the full amount of the damages were it later determined that the Preliminary Injunction was wrongly granted.

58. Those damages would come to at least the following:

| Line Item | Description and Calculation | Minimum Amount |
|---|---|---|
| Loss Income | I am informed that the Federal Judiciary Center shows that cases in the Northern District of Illinois on average take 40 months to resolve. The number displayed is 40 x $44,000.00 | $1,760,000.00 |
| Damage to Value of Store | Even if Reinstated after the trial, long term damage to account health and listing ranking would lower the value of the store by 90%. Value displayed is based on a 60 x monthly net basis. | $1,890,000.00 |
| | **Total:** | *Not less than* **$3,650,000.00** |

59. We therefore submit that if the Court were inclined to issue a Preliminary Injunction that at least with respect to us, the bond should be in the amount of $3,650,000.00.

F.   **CONCLUSION**

60. Our product does not infringe the Plaintiff's design.

61. We have already suffered damages in the amount of not less than $279,000.00.

62. If the Court were inclined to issue a Preliminary Injunction, it should require the Plaintiff to put up a bond in the amount of not less than $3,650,000.00.

I further affirm that the following Exhibits referred to above attached to this Affidavit are complete, true and accurate copies of their original:

Exhibit A – screenshot taken by my Counsel of the ASIN listed for us by the Plaintiff

Exhibit B – pdf sent by Plaintiff's Counsel comparing Plaintiff's design with our supposedly infringing design.

Further, your Affiant sayeth not.

RESPECTFULLY SUBMITTED

_____
SIK YAN WONG for
BF CONCEPT LIMITED