# Klauber Bros., Inc. v. Westchester Lace, Inc.

United States District Court for the Southern District of New York

March 30, 1989, Decided and Filed

No. 87 Civ. 7370 (BN)

**Reporter**
1989 U.S. Dist. LEXIS 3169 *; Copy. L. Rep. (CCH) P26,406

KLAUBER BROTHERS, INC., Plaintiff, v. WESTCHESTER LACE INCORPORATED, Defendant

## Core Terms

lace, notice, designs, style, copies, shells, copyright infringement, affixed, spool, flower, parties, infringement, plft's, yard, fan, substantially similar, letter agreement, labels, void, manufacturer, deft's, legal action, covering, repeat, promise, bright, yarn, fabric, hire, ribs

**Counsel:** [*1] HELFAT AND HELFAT, By: Bernard A. Helfat, Esq., of Counsel, New York, NY, Attorneys for Plaintiff

COHEN, PONTANI & LIEBERMAN, By: Myron Cohen, Esq. and Beth Kovitz, Esq., of Counsel, New York, NY, Attorneys for Defendant

**Opinion by:** NEWMAN

## Opinion

*OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW*

*BERNARD NEWMAN, Senior Judge, United States Court of International Trade, sitting as a District Court Judge by designation:*

*Introduction*

*Klauber Brothers, Inc., a manufacturer of lace for the garment trade, seeks a permanent injunction and damages against Westchester Lace Incorporated, a competing lace manufacturer, for alleged infringement of two separate copyrights covering two different designs in lace. Further, plaintiff seeks recovery of damages for breach of contract concerning another lace design. The total sum of damages sought by plaintiff is $ 314,793.07, making no allowance for overhead, or $ 259,432.64 if sales commissions and shipping costs are taken into account (plft's post-trial brief at 36).*

*For the reasons set forth below, the complaint is dismissed.*

*The court has jurisdiction of plaintiff's copyright infringement claims pursuant to 28 U.S.C. § 1338. Jurisdiction over the state law breach* [*2] *of contract claim is disputed by defendant. Considering that such cause of action has as its genesis a copyright infringement dispute between the parties and the "judicial economy, convenience, and fairness to [the] litigants," jurisdiction over the breach of contract count may fairly be entertained under the doctrine of pendent jurisdiction.* [1] *United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). This action was tried to the court without a jury.*

*The court makes the following findings of fact and conclusions of law as required by Rule 52, Fed.R.Civ.P.:*

*Branch of Contract*

*Plaintiff's cause of action for breach of contract arises under a so-called "letter agreement" of January 20, 1983 (plft's exh. 12) in which defendant agreed to "permanently discontinue their [sic] style numbers 1518, 1576, and 852." Id. Plaintiff asserts that the manufacture and sale by defendant of its style 1518 (plft's exh. 11) since 1985 constitutes a breach* [*3] *of the letter agreement.*

---

[1] Defendant concedes that plaintiff's breach of contract claim would be within the court's diversity jurisdiction under 28 U.S.C. § 1332, if pleaded, since plaintiff is a New York corporation and defendant is a New Jersey corporation.

In paragraph 4 of the agreement, the parties stipulated that the agreement would be void in the event Klauber took legal action against Westchester regarding copyright infringement. *Id.* Defendant posits that since Klauber sued Westchester for copyright infringement in 1984, the 1983 letter agreement, by the egress terms of paragraph 4, became void and accordingly defendant had the right to resume manufacture and sale of its style 1518 in 1985.

The circumstances leading to the parties' letter agreement of January 20, 1983 follows:

Klauber and Westchester engage aggressively in competition with each other and with other lace manufacturers. In the course of their respective businesses, the parties have developed various lace designs or styles and plaintiff has vigorously sought copyright protection for what it believed were original designs. These copyrighted designs have been the bases for several infringement disputes between the parties, and in three instances (including the present case) legal actions were brought by plaintiff against defendant.

Thus, in 1973 Klauber and other plaintiffs filed suit against Westchester in the United States District Court [*4] for the Southern District of New York (73 Civ. 5177). Plaintiffs moved for a preliminary injunction to enjoin alleged infringement of copyrights covering a number of different designs in lace, including alleged infringement of Klauber's copyright (plft's exh. 10) covering its style No. 1899 (plft's exh. 9) by defendant's style 1518 (Tr. 193). Judge Metzner found that defendant had raised substantial questions on the merits casting serious doubt as to whether plaintiffs could prevail at trial, and accordingly denied plaintiffs' motion for a preliminary injunction. *Klauber Brothers, Inc. v. Westchester Lace Works, Inc., 181 U.S.P.Q. 523 (S.D.N.Y. 1974)*. The 1973 suit never proceeded to the merits. Instead, in 1975 Klauber and Westchester entered into a settlement agreement (deft's exh. 28) in which Klauber covenanted not to sue for copyright infringement concerning several copyrights, and in which Klauber specifically recognized Westchester's right to produce its style 1518 lace (Tr. 104, 194).

Again, in 1982 Klauber sued Westchester for copyright infringement - this time involving Westchester's style Nos. 1576 and 852 laces - which are not involved in the present litigation. The [*5] parties' principals, Leonard Edelson (defendant's president) and Roger Klauber (plaintiff's president) discussed the dispute by telephone, then exchanged proposed letter agreements and thereafter entered into the letter agreement of January 20, 1983 (plft.'s exh. 12, deft.'s exh. 18). [2] That letter agreement, containing paragraph 4, is the basis for the breach of contract count of the complaint for defendant's manufacture and sale of its style 1518 lace commencing in 1985.

So far as pertinent, the letter agreement (which was drafted by the parties without the aid [*6] of legal counsel) reads:

This is to confirm our telephone conversation in which it was agreed:

1. Westchester will permanently discontinue their [sic] style numbers 1518, 1576, and 852.

2. Klauber Brothers will notify Westchester Lace in the future of any copyright infringement of their laces and allow Westchester to immediately discontinue manufacturing these styles and come to an agreement about the disposal of the goods in question.

3. Klauber Brothers will not start any legal action if point 2 is satisfactorily settled within a period of 2 weeks.

4. This agreement will be voided if an agreement cannot be reached in regard to the disposal of the goods in question and if legal action is taken by Klauber Brothers.

Consequently: although the 1975 agreement between the parties settling 73 Civ. 5177 granted Westchester the right to manufacture and sell its style 1518, Westchester nonetheless agreed in paragraph 1 of the 1983 letter agreement to "permanently discontinue" that style as well as two other styles. Klauber in turn, under paragraphs 2 and 3, agreed that in the future it would give Westchester notice of any infringement of Klauber's copyrights and not start any legal [*7] action if the parties came to an agreement within a period of two weeks concerning "the disposal of the goods in

---

[2] An agreement between the parties was initially proposed by telephone and subsequently by an exchange of letters dated January 13 and 18, 1983 (deft's exhs. 17 and 29). As proposed by Klauber, the agreement did not contain paragraph 4. However, Edelson revised the agreement by adding paragraph 4, signed the revised agreement dated January 20, 1983 (plft's exh. 12; deft's exh. 18) and sent it to Klauber for signature. Klauber then executed the letter agreement of January 20, 1983. The latter document represents the final version of the agreement between the parties pertinent to plaintiff's breach of contract count.

question." Neither paragraph 2 nor 3 makes reference to any of the style numbers mentioned in paragraph 1 - indeed, they mention no specific styles whatever. In paragraph 4, which was inserted in the agreement at the insistence of Mr. Edelson, the parties stipulated (with obvious reference to the preceding paragraphs 2 and 3) that the agreement would be "voided" if "an agreement could not be reached in regard to the disposal of the goods in question and if legal action is taken by Klauber Brothers."

Unfortunately, a copyright infringement dispute followed by litigation again arose between the parties after the January 20, 1983 agreement. Upon failing to amicably resolve the dispute, Klauber filed suit against Westchester on January 24, 1984 in the United States District Court for the Southern District of New York (84 Civ. 519) for alleged infringement of copyrighted lace designs 2827 and 3561, neither of which was mentioned in paragraph 1 of the letter agreement. The 1984 suit was settled in July 1984, and Westchester (believing that the letter agreement had become void **[*8]** because of the suit) subsequently resumed manufacture and sale of its style 1518.

Defendant contends that under paragraph 4, the letter agreement became void when Klauber commenced its new legal action on January 24, 1984, and that defendant had the right under the 1975 settlement agreement to resume manufacture and sale of its style 1518 in January 1985.

Plaintiff maintains that the agreement did not become void because paragraph 4 is applicable only if a suit involves the styles specifically mentioned in paragraph 1 whereas the 1984 action involved different styles.

Defendant responds by stating that paragraphs 2, 3 and 4 of the agreement must be read together, and when so construed, these paragraphs were intended to apply to new and future controversies over styles other than those mentioned in paragraph 1.

Paragraphs 2 and 3 make no reference whatever to the style numbers mentioned in paragraph 1, and therefore are patently not limited to those styles. The language in paragraph 4, "in regard to the disposal of the goods in question" must be read in context with the identical language used in paragraph 2, and paragraph 4 must also be read in context with paragraph 3 as both paragraphs **[*9]** 3 and 4 refer to legal action taken by Klauber. Thus, paragraph 4 when read in the context of the preceding two paragraphs plainly provides for termination of the latter agreement if a settlement cannot be reached by the parties concerning any copyright infringement controversy and legal action is then taken by Klauber. Under any fair construction of the agreement read as a whole, paragraph 4 is not restricted to controversies concerning merely the styles mentioned in paragraph 1 *(viz.,* style Nos. 1518, 1576 and 852), as speciously urged by plaintiff.

In any event, because of paragraph 4, the court has great difficulty in finding any agreement legally binding on either party. Hence, if after signing the agreement Westchester had breached its "promise" in paragraph 1 by refusing to discontinue manufacturing any of the styles mentioned and Klauber brought suit to enforce the agreement, according to plaintiff's own interpretation, the contract would be null and void by virtue of paragraph 4. As aptly stated by defendant: "Reading paragraph 4 in connection only with paragraph 1, as Klauber contends, leads to a construction of the contract which says that the contract is a nullity **[*10]** if and only if Westchester breaches paragraph 1 and Klauber sues Westchester for the breach." However, it is obvious that if the parties to an agreement provide that in the event of breach, the agreement becomes void upon its enforcement by legal action, the promises by the parties are illusory - there is no contract at all.

An "illusory promise" is defined in *Black's Law Dictionary,* 5th Ed. 1979, p. 674, as follows:

A purported promise that actually promises nothing because it leaves to the speaker the choice of performance or nonperformance. When a promise is illusory, there is no actual requirement upon the promisor that anything be done because promisor has an alternative which, if taken, will render promisee nothing. When provisions of supposed promise leave promisor's performance optional or entirely within discretion, pleasure and control of promisor, the promise is illusory. *Interchange Associates v. Interchange Inc., 16 Wash. App. 359, 557 P.2d 357, 358*.

Under plaintiff's interpretation, after execution of the letter agreement defendant, if it so chose, could do absolutely nothing to comply with paragraph 1, and if plaintiff then brought suit to enforce the agreement, **[*11]** the agreement would be void, in accordance with paragraph 4. Obviously, according to plaintiff's interpretation of the agreement, defendant really committed itself to do nothing.

However, even under defendant's interpretation, it is difficult to perceive of plaintiff's "promises" under the agreement as anything other than illusory. Therefore,

Klauber could have easily refused to give defendant notice of infringement and an opportunity to come to an agreement (as provided in paragraphs 2 and 3) and taken immediate legal action, all of which was entirely within the control of Klauber. It would follow that after Klauber commenced a law suit, the agreement would be void and Klauber could then have proceeded with its lawsuit unhampered by the provisions of the agreement.

The short of the matter is that by virtue of paragraph 4, the performance of the promises by the parties in paragraphs 1, 2 and 3 is completely within their discretion and control and hence there is no binding contract between them. Alternatively, assuming *arguendo* that there was a binding agreement between the parties, the 1984 lawsuit by Klauber against Westchester voided the agreement and restored to Westchester **[*12]** its right to manufacture and sell style 1518. ³ In either case, of course, no cause of action by plaintiff against defendant exists for breach of contract based upon the letter agreement.

*Copyright Infringement*

*In the two counts of its complaint for copyright infringement, plaintiff alleges* **[*13]** *that defendant's manufacture and sale of its design 3058 (plft's exh. 4; deft's exh. 4) is an infringement of plaintiff's copyright registration VA 116-148 (plft's exh. 2; deft's exh. 1) covering plaintiff's substantially similar design No. 2785 (plft's exh. 1); and that defendant's manufacture and sale of its lace design No. 1534 (plft's exh. 8; deft's exh. 12) infringes plaintiff's copyright registration Gp 61598 (plft's exh. 7) covering plaintiff's substantially similar design No. 2182 (plft's exh. 6).*

---

³ Fundamentally, when there is an ambiguity in a contract, parol evidence may be received in order to determine the intention of the parties in entering into the contract and to resolve the ambiguity. *Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9 (2d Cir. 1983)*; *Triad Financial Establishment v. Tumpane Co., 611 F. Supp. 157, 162 (N.D.N.Y. 1985)*. Such parol evidence was admitted during the trial and establishes that the parties intended: first, to avoid copyright infringement litigation by requiring notice of infringement and opportunity for defendant to discontinue manufacturing the styles in question and come to an agreement concerning their disposal; and second, the agreement looked to the future and encompassed all of plaintiff's copyrighted designs and not merely the three designs listed in paragraph 1 of the agreement that were already in dispute when the agreement was executed.

*Defendant insists: (1) plaintiff's copyrights covering its 2785 and 2182 designs are each invalid since plaintiff failed to affix a reasonable notice of its copyrights to its lace; (2) plaintiff is not the owner of the copyright covering design No. 2785 and therefore plaintiff has no standing to bring this action; and (3) defendant's 3058 and 1534 designs do not infringe plaintiff's 2785 and 2182 designs since the parties' designs are not substantially similar.*

*1.*

*Notice of Copyright*

*A critical threshold question presented is whether the notice of copyright applied by plaintiff to its laces is adequate to meet the statutory notice requirement. Klauber's lace is sold either on* **[*14]** *spools containing hundreds of yards of material or in sample pieces. Except for samples, plaintiff sells its lace in a minimum quantity of a package of several spools, the number of spools per package depending upon the width of the lace. However, Klauber prices its lace by the lineal yard, as does the rest of the industry.*

*Plaintiff copyrights all of its original designs to protect them from being copied by competitors. A notice of copyright is affixed to Klauber's lace by its cutting and spooling contractors who sandwich the open end of the lace on a spool between two cloth labels imprinted with the copyright legend prescribed by the statute (17 U.S.C. § 401(b)). These spools of lace may contain two hundred lineal yards or more of material, but the notice is affixed to the lace itself only once at the open end of each spool. Additionally, some of plaintiff's contractors affix a notice of copyright on the flange of the spool as well as on the lace itself. When Klauber cuts off a three or five yard long piece of lace from a spool for a sample, it attaches a label bearing the copyright notice on the sample card or on the piece of lace itself. Labels are then affixed to the end of the* **[*15]** *remaining lace on the spool. Labels are attached to the lace or spools by hand.*

*In addition to selling lace to garment manufacturers, plaintiff sells to jobbers. When plaintiff sells lace to jobbers, there is always a copyright notice affixed when the lace leaves plaintiff's control. However, before these jobbers resell the lace, they routinely remove Klauber's copyright notices from the lace to conceal their source of supply from their customers.*

*Predicated upon the foregoing facts, defendant strenuously argues that plaintiff's notice of copyright is legally insufficient. Plaintiff, on the other hand, counters that it has adopted the only "commercially possible" manner of affixing a notice of copyright to a spool of lace containing hundreds of yards of material bearing a repetitive design; that "there is no practicable alternative to the method used; and that if such method is held by the court to be insufficient, copyright protection for lace designs will be impossible, and the industry will face chaos." (Plft's brief* at 18-19.)

Plainly, an issue of significant economic importance to the lace industry is presented in this case. While this issue is not strictly one of first **[*16]** impression, it has never been finally resolved by the courts. [4]

Fundamentally, of course, where an article passes into commerce without the statutorily required notice, the copyright holder forfeits his rights under the copyright and the article may be freely copied by others. [5] Greeff Fabrics Inc. v. Malden Mills Industries, 412 F. Supp. 160, 162-63 (D.C.N.Y. 1976), aff'd without opinion, 556 F.2d 556 (2d Cir. 1977), citing Peter Pan Fabrics, Inc. **[*17]** v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960). Hence, the statutory notice requirement fulfills the public policy function of separating and distinguishing that which is copyrighted from that which is not. 2 Nimmer, Copyrights, § 7.02 (1987).

The 1909 Copyright Act, applicable to plaintiff's registration Gp 61598 filed on March 21, 1969 covering design 2182, states at section 10, so far as pertinent, that "notice must be affixed to each copy." Klauber's more recent registration VA 116-148 dated December 30, 1982 covering 2785 must comply with the 1976 Copyright Act (generally effective January 1, 1978) which provides in 17 U.S.C. § 401(a) regarding copyright notice that "a notice of copyright * * * shall be placed on all publicly distributed copies * * *." Section 401(c), pertaining to the "Position of Notice," requires that notice be affixed so as to give "reasonable notice" of the claim of copyright. Further, under section **[*18]** 401(c), the Register of Copyrights is directed to "prescribe by regulation, as examples, specific methods of affixation and positions of the notice on various types of works that will satisfy this requirement [to provide reasonable notice of the copyright], but these specifications shall not be considered exhaustive." 17 U.S.C. § 401(c).

In conformance with the directive in section 401(c), the Register of Copyrights promulgated the following regulation:

(4) Where a work is reproduced in copies consisting of sheet-like or strip-like material bearing multiple or continuous reproductions of the work, the notice may be applied: (i) to the reproduction itself; (ii) to the margin, selvage or reverse side of the material at frequent and regular intervals; or (iii) *if the material contains neither a selvage nor a reverse side, to tags or labels, attached to the copies and to any spools, reels, or containers housing them in such a way that a notice is visible while the copies are passing through normal channels of commerce.*

37 C.F.R. § 201.20(i)(4) (1981) (emphasis added).

While plaintiff makes no claim that its method of giving notice substantially conforms to any of the methods suggested **[*19]** by the regulation, [6] section 401(c)

---

[4] The issue of the sufficiency of notice under 17 U.S.C. § 10 with regard to lace designs was raised in Thomas Wilson & Co. v. Irving J. Dorfman Co., 433 F.2d 409, 411-12 (2d Cir. 1970), cert. denied, **401 U.S. 977 (1971)**, but was not resolved because defendant failed in its burden of proof on the notice issue. *See also* Klauber Bros., Inc. v. Westchester Lace Works, Inc., 181 U.S.P.Q. 523, 524-25 (S.D.N.Y. 1974), discussed *infra* (plaintiff's motion for a preliminary injunction was denied where court held that serious preliminary injunction was denied where court held that serious question had been raised by defendant concerning the adequacy of plaintiffs' copyright notice, but case was subsequently settled).

[5] Pursuant to 17 U.S.C. § 405, certain exceptions are prescribed under which the omission of a copyright notice does not invalidate the copyright. None of these exceptions are claimed by plaintiff or appear to be applicable in the present case.

[6] In the case of lace designs, "[w]here the work is reproduced in copies consisting of sheet-like or strip-like material bearing multiple or continuous reproductions of the work" and "the material contains neither a selvage nor a reverse side," a notice may be given in conformity with subdivision (iii) of 37 C.F.R. § 201.20(i)(4) (1981) by "tags or labels, attached to the copies *and* to any spools * * * housing them" (emphasis added). Clearly, the "copies" encompassed by subsection (i)(4) "consisting of sheet-like or strip-like material" bearing repeating designs are not merely a single reproduction of the design. While, arguably, the term "copies," as used in the regulation, could embrace an entire 100-500 yard spool of lace, plaintiff did not deposit with the Register of Copyrights an entire spool of lace as a "copy" of its work. *See* Greeff Fabrics,

Case: 1:23-cv-10407 Document #: 75-3 Filed: 10/26/23 Page 6 of 13 PageID #:1265

Page 6 of 13
1989 U.S. Dist. LEXIS 3169, *19

expressly provides that the regulation's exemplar methods of affixing notice shall not be considered as exhaustive. Accordingly, the basic issue under both the 1909 and 1976 Acts is whether plaintiff's notice of copyright, attached once per spool of lace or sample, is reasonable. Klauber insists that from the standpoint of commercial practicality and cost, its method of giving notice is reasonable.

[*20] In *Greeff Fabrics Inc., 412 F. Supp. at 163*, the court observed:

However, there is much debate as to what the appropriate statutory notice is with respect to a repeating fabric design. The Copyright Act states that the notice "shall be affixed to each copy" of the protected work. 17 U.S.C. 10. But "[b]ecause of the continuous nature of the composite design printed on [certain fabrics] there are conceptual difficulties inherent in determining the limits of the protected 'work, 'and the number of 'copies' thereof contained in a bolt" of the finished product. *H.M. Kolbe Co. v. Armgus Textile Co., 315 F.2d 70, 72 (2d Cir. 1963)*.

Continuing, *Greef* found:

[T]he weight of authority does indicate that the notice must appear at frequent intervals on the selvage or thoughout the design itself. * * * Furthermore, * * * it is clear that with respect to repetitive designs imprinted on a continuous roll of material the "copies" of the work deposited by the author with the Register of Copyrights pursuant to 17 U.S.C. § 13 set the "outer limit within which published copies must bear the statutory notice." * * * Since petitioner's officially deposited copies are less than three yards [*21] in length, the single copyright notice affixed by Belle to the fifty yard rolls it produced is insufficient to protect Greeff's copyright.

*412 F. Supp. at 163-64*.

*412 F. Supp. at 163-64*. Further, it may be noted that the regulation has two requirements for sheet-like or strip-like "copies" bearing repeating designs: the notice must be attached to the copies *and* to any spools, reels or containers housing them. Although plaintiff consistently affixed its notices to the lace material, admittedly notices were not always affixed to the spools. Consequently, there can be no claim by plaintiff that the regulation was complied with.

*United Merchants and Manufacturers, Inc. v. Sutton, 282 F. Supp. 588-90 (S.D.N.Y. 1967)*, holds that in the case of repeating fabric designs, notice is sufficient if it is placed on the selvage of the goods once for each yard of the goods.

Klauber insists that in determining whether its notice is reasonable, the court must be guided by what is feasible, citing Learned Hand's decision in *Peter Pan, supra.* Here, plaintiff maintains that it has adopted the only commercially feasible manner of affixing a notice of copyright to its lace, easily distinguishing the cases heavily relied upon by defendant involving *printed fabric with a selvage upon which the copyright notice may be readily printed at frequent intervals.* It may be stating the obvious, but plaintiff's lace is unprinted and moreover contains no selvage.

Relative to commercial feasibility, Klauber points to the evidence of record showing that: attaching cloth labels at 12 inch intervals to hundreds of yards of lace per spool would involve much hand labor, [*22] and would take longer to attach the labels to the lace than to knit and dye the inexpensive (three cents per yard) lace itself; that the labels are "quite expensive," costing over $ 5,000.00 per year; and that the labels would have to be removed by the garment manufacturer, who "could never use the lace that way" and "would never buy the lace" in that condition. Tr. 19-20. Under the foregoing circumstances, the method adopted by Klauber appears to be reasonable.

Defendant's president, Edelson, who himself conceded he never attaches notices of copyright to his copyrighted lace (Tr. 328), testified concerning a method of affixing copyright notices to the full length of the spool of lace at frequent intervals, which method he asserted could easily and inexpensively be accomplished by a special spooling operation. However, the court gives no credibility to the special spooling method described by Edelson. He admitted that he had never tried the method described to see if it would actually work, nor had Edelson ever seen the method used by anyone. Finally, Edelson admitted that he knew of no lace manufacturers that attached a copyright notice to every yard of their material (Tr. 247, 328). [*23] On rebuttal, Klauber testified that based upon his personal experience in winding lace, the method described by Edelson, involving the use of a tape wound with the lace, was technically impossible (Tr. 271).

The short of the matter is that Klauber's method of affixing notice of its copyright, which gives adequate

notice to the garment manufacturers and jobbers to whom plaintiff sells its goods by the package, is sufficiently reasonable to satisfy the statutory notice requirement. This conclusion is in accord with the view that the notice requirements of the Copyright Act should be liberally construed. *Irving J. Dorfman Co. v. Borlan Industries, Inc., 309 F. Supp. 21, 24 (S.D.N.Y. 1969)*.

Defendant's contention that removal of the notices by jobbers to whom plaintiff sells its lace invalidates the copyrights is without merit. In *Dorfman,* the court held: "The threshold question is whether the copyright notice was affixed when the goods left plaintiff's factory, and it is not fatal if others later removed the required notice." *309 F. Supp. at 24*. See also *17 U.S.C. § 405(c)* reading:

Removal of notice. Protection under this title is not affected by the removal, destruction, **[*24]** or obliteration of the notice, without the authorization of the copyright owner, from any publicly distributed copies or phonorecords.

Finally, on the issue of notice, defendant relies on *Klauber Bros. Inc. v. Westchester Lace Works Inc., 181 U.S.P.Q. 523 (S.D.N.Y. 1974)*, wherein plaintiff herein and others sought a preliminary injunction before Judge Metzner in a previous lawsuit for copyright infringement of certain lace designs. In the prior case, defendant also raised the issue of the validity of Klauber's copyright under the notice provision of the Act. There, the court made the following observations in denying plaintiffs' application:

[D]efendant claims that in many cases plaintiffs fail to put copyright notices on their laces and when they do, it is only at the beginning of each spool containing from 100 to 500 yards of lace. The notice consists of two gummed labels affixed to the lace back-to-back. The question of whether one label at the beginning of a 100-500 yard spool of lace is sufficient notice is an important one. There is authority to support the position that such notice is insufficient, especially where the specimen deposited with the Copyright Office is no **[*25]** longer than 38 inches. *H.M. Kolbe Co. v. Armgus Textile Co., 315 F.2d 70, 137 USPQ 9 (2d Cir. 1963)*, indicates that the notice must be repeated at least every 38 inches in this case.

Also, the affidavits and exhibits submitted by defendant show that both plaintiffs sell their copyrighted laces to jobbers who insist that all markings indicating the source of the lace be removed so that those to whom they sell will not be able to go directly to the lace converter. By providing such lace without the required notice and passing it into the stream of commerce, the rights obtained under the copyright law are abandoned and the article may be copied by others. *Irving J. Dorfman Co. v. Borlan Industries, Inc., 309 F. Supp. 21, 165 USPQ 539 (S.D.N.Y. 1969)*. *If plaintiffs have done this with the laces at issue here, they will not prevail at trial. The evidence thus far submitted by defendant, while not sufficient in and of itself to prevail at trial, does raise serious questions as to plaintiffs' ability to uphold the validity of its copyrights* at that time.

*181 U.S.P.Q. at 524-25* (emphasis added).

As we have seen, the prior litigation between these parties was settled before trial **[*26]** on the merits, and therefore no final decision was rendered concerning the notice issue raised by defendant.

The record in the present case shows that the lace sold by plaintiff to jobbers leaves plaintiff's control with a notice attached, and there is no suggestion in the record that Klauber authorizes or approves of the removal of the notice by the jobbers. More, the evidence submitted by plaintiff at trial concerning commercial impracticability was not before Judge Metzner in the prior case. As previously stressed herein, unlike the printed fabric in *Kolbe* (followed by Judge Metzner), where the notice of copyright was printed upon the selvage down one side of the fabric at intervals of 16 inches, Klauber's lace is not a printed fabric with a selvage upon which a copyright notice may practicably be printed at frequent intervals. Accordingly, to construe the statute to require that labels be affixed to spools of lace 100 yards or more in length at 12 inch or even one yard intervals (which labels would then have to be removed by the garment manufacturer) is clearly unrealistic from the standpoint of commercial feasibility. In sum, to apply in the current situation the reasoning **[*27]** of the printed fabric cases relied upon by defendant would in effect deny copyright protection to many original lace designs.

2.

*Ownership of Copyright VA 116-148 under the "Work Made for Hire" Doctrine*

*The court now addresses defendant's contention that Klauber does not own copyright VA 116-148 covering design 2785 and therefore has no standing to sue for infringement of the copyright on that design. Defendant maintains that Klauber does not own the copyright on 2785 because that design was not a "work made for hire."*

*Copyright VA 116-148, dated December 30, 1982, is governed by the 1976 Copyright Act, which provides in section 201(a), 17 U.S.C. § 201(a): "Copyright in a work protected under this title vests initially in the author or authors of the work." Section 201(b) further states: "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."*

*Section 101 of the 1976 Act, 17 U.S.C. § 101, defines a "work made for hire" in two parts. Part (1)* **[*28]** *of the definition covers: "a work prepared by an employee within the scope of his or her employment." In Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir.), cert. denied, 469 U.S. 982 (1984), the Second Circuit held that an independent contractor could be an employee within part (1) if the contractor is "so controlled and supervised in the creation of the particular work by the employing party that an employer-employee relationship exists." Id. at 552-53. Accord, Evans Newton Inc. v. Chicago Systems Software, 793 F.2d 889 (7th Cir.), cert. denied, 479 U.S. 949 (1986).*

Here, however, defendant posits that design 2785 was created by an independent contractor, Mr. Leslie Szonyi, prior to the existence of any contractual relationship between Klauber and Szonyi, and consequently 2785 is not a "work made for hire" irrespective of any modifications to the work that may have occurred after the contractual relationship arose. Defendant concedes that if an independent contractor, at the special request and direction of the employer and subject to the actual supervision and control of the employer, produces an artistic product, then the artistic product is **[*29]** a work made for hire.

Defendant's contention that Klauber does not own the copyright on 2785 because that design was not a work made for hire is without merit in this Circuit.[7] The record establishes that Szonyi's wife, Risa, approached Mr. Klauber "with some design ideas" (Tr. 73), other than the 2785 (Tr. 117-18), and Klauber explained to her what he had in mind in the way of a shell or fan design. Risa then brought Klauber's ideas back to her husband who then prepared a group of sketches in conformity with Klauber's concept. After a revision of Szonyi's original designs and of his sketches by Mr. Klauber, design 2785 crystallized (Tr. 117-18). Hence, the record establishes that 2785 evolved *after* a contractual relationship between Klauber and Szonyi arose, and that 2785 was produced by Szonyi at the request and under the direction and control of Klauber after he was approached by Szonyi's wife.

**[*30]** Following the rationale of the Second Circuit in *Aldon,* 2785 was a work made for hire within the definition of that term in 17 U.S.C. § 101(1) and accordingly, Klauber has standing to sue for infringement of the copyright on that design.

3.

*Substantial Similarity of Parties' Designs*

*The gravamen of a cause of action for copyright infringement is copying by defendant. Copying may, of course, be proved directly; but ordinarily copying is established indirectly (ie., inferred) by plaintiff's proof of access and substantial similarity. Walker v. Time Life Films Inc., 784 F.2d 44, 48 (2d Cir. 1986), cert. denied, 476 U.S. 1159 (1987); Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 (2d Cir. 1977); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946).*

The record contains no *direct* evidence whatever that defendant copied either plaintiff's 2785 or 2182 designs and plaintiff does not claim otherwise. Under these circumstances, to make a prima facie case of infringement, Klauber had the burden of establishing that Westchester had access to plaintiff's designs and proving the substantial similarity of the parties' designs.

There is little doubt **[*31]** that defendant had access to

---

[7] The Second Circuit's construction of the "work made for hire" definition articulated in *Aldon* was rejected by the Fifth, District of Columbia and Ninth Circuits. See *Easter Seal Society v. Playboy Enterprises, 815 F.2d 323 (5th Cir. 1987),* reh'g en banc denied, **820 F.2d 1223 (5th Cir. 1987)**, cert. denied, **108 S. Ct. 1280 (1988)**; *Community for Creative Nonviolence v. Reid, 846 F.2d 1485, 1494* (D.C. Cir.), cert. granted, **109 S.Ct. 362 (1988)** (argued in the Supreme Court on March 29, 1989); *Dumas v Gommerman, 9 USPQ2d 1701 (9th Cir. 1989).*

plaintiff's designs inasmuch as plaintiff's laces were widely available in the marketplace prior to the preparation of defendant's designs; and moreover, in the case of style 2785, defendant admittedly was furnished a sample of that lace by a customer, BRA-TIQUE, prior to defendant's design of its 3058 lace. But applying the substantial similarity test the court finds that plaintiff failed to establish that any actionable copying occurred.

The "substantial similarity" standard most favored by the courts and frequently applied in this circuit "is that substantial similarity should be judged by the spontaneous response of the ordinary lay observer." *Walker, 784 F.2d at 51*. While the standard of whether an ordinary lay observer would perceive a "substantial similarity" of two designs is inherently intangible and therefore presents difficulties in its application to specific articles, [8] the court concludes that defendant's designs are not substantially similar to those of plaintiff.

 [*32] Klauber's design 2785, [9] as illustrated by plaintiff's exhibit 1 (see Appendix A), possesses the configuration of shells or fans facing each other with ribs or struts of alternating bright and dull yarns emanating from a single point with a five petal flower separating the shells. In the 2785, two shells make a repeat.

 [*33] Defendant's design 3058 (plft's exh. 4; deft's exh. 4; *see* Appendix A), possesses the configuration of a symmetrical shell or fan with ribs of alternating bright and dull yarns emanating from a central stem or vertical axis running down the center of the fan and connecting to the lower-most ribs to form an inverted Y. In 3058, the shells are separated by three petal flower designs, and a single symmetrical shell makes a repeat.

Plaintiff's 2785 and defendant's 3058 designs are similar in that they both utilize a fan or shell configuration of approximately the same dimensions which contains alternating ribs or struts of dull and bright yarns, and the shells are separated by a flower design outlined in bright yarn. However, the concept of lace designs comprising fans or shells alternating with flowers and the use of bright and dull yarns are not new in the lace industry (Tr. 209, 255-56), as demonstrated by defendant's exhibits 14 and 15, and there are significant disparities between the two designs in their individual elements and overall appearance that preclude a finding of substantial similarity:

1) Klauber's 2785 has a repeat of two shells facing each other, while Westchester's [*34] 3058 has a repeat of one shell;

2) the shells in 2785 appear curved while those in 3058 are symmetrical and appear to be flat;

3) the ribs or struts in Klauber's shells all emerge from a central focal point whereas the ribs of Westchester's shells branch off from a central vertical stem or spine;

4) the ribs of bright yarn in Klauber's shells vary in thickness while those in Westchester's shells appear much more uniform in thickness;

5) Westchester's shells have a hanging loop of bright yarn below the lower-most ribs enclosing an object of bright yarn while Klauber's shells are entirely lacking in this component;

6) the Klauber 2785 has a four (or five) petal flower design between the shells whereas the Westchester 3058 has a three petal flower design between the shells with a distinctly different configuration.

Although Edelson readily admitted that BRA-TIQUE replaced Klauber's 2785 with Westchester's 3058, there is no evidence from BRA-TIQUE (or from any other source) concerning the reason for the replacement.

---

[8] As observed by Chief Judge Learned Hand in *Peter Pan Fabrics, 274 F.2d at 489*, "[t]he test for infringement of a copyright is of necessity vague" and "[i]n the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more intangible" than in the case of verbal "works."

[9] Klauber's 2785 and 2182 designs were each produced in several different widths comprising "sets." Klauber gave each separate width in a set a different style number. All of the separate widths of lace in a set utilizing the same design are claimed by plaintiff to be protected by the copyright issued on the particular width submitted to the Register of Copyrights. Defendant, however, insists that because the sample of lace filed with the copyright registration was a 6-1/2 inch width known as No. 2785, and defendant's accused lace is 1-1/4 inches in width, designated by Klauber as No. 2782, plaintiff's copyright on its 2785 does not extend to 2782.

The court, however, agrees with plaintiff's contention that a copyright covering a design utilized in laces of several widths comprising a set covers each of the widths in the set. Here, plaintiff's 1-1/4 inch width lace, designated as 2782, is contained within and forms a part of the wider width 2785 lace. Therefore, defendant's argument that Klauber's 2782 is not covered by the copyright registration for 2785 is rejected. Similarly, plaintiff's registration covering design 2182 also covers Klauber's 2173 (deft.'s exh. 13), which is merely one of the widths in the set utilizing the 2182 design.

Obviously, BRA-TIQUE's replacement of plaintiff's lace with that of defendant's could have occurred for any number of reasons, and there is no basis whatever in the record [*35] for finding that BRA-TIQUE regarded the 2785 and 3058 as substantially similar designs.

After copyrighting 2785, the 2782 width lace was sold by Klauber to BRA-TIQUE for use in brassieres, as illustrated by plaintiff's exhibit 3, which were then sold to K-Mart. Mr. Klauber testified that he discovered defendant's 3058 lace had been used in BRA-TIQUE'S brassieres, as illustrated by defendant's exhibit 5, when he was inspecting brassieres hanging on a rack in a K-Mart store in Rhode Island. Klauber regards the 2785 and 3058 laces as interchangeable in use for brassieres and as commercially indistinguishable. Mr. Klauber further stated that plaintiff sold its 2782 lace to BRA-TIQUE until that company began purchasing defendant's 3058 lace; however, since the commencement of this action, BRA-TIQUE has again purchased plaintiff's 2782 lace.

The genesis of style 3058 is elucidated by defendant's witnesses Edelson and Barney Tiefenbraun, a former employee of defendant, and at the time of trial a freelance lace designer. While some of the testimony of Messrs. Klauber and Edelson may be viewed with some scepticism, Tiefenbraun's testimony, on the other hand, was particularly credible inasmuch [*36] as Messrs. Klauber and Edelson are both substantial clients and very close friends of Tiefenbraun. Indeed, Tiefenbraun stated that he regarded Klaulber and Edelson as close family relatives, and he regarded as most unfortunate that he was called upon by Edelson to testify as a witness for defendant in this litigation. Although conceding that Westchester gave him more business than Klauber, Tiefenbraun emphasized that he was testifying on behalf of Westchester "reluctantly" (Tr. 156) as he did not wish to injure either of the parties. Moreover, the court was favorably impressed with Tiefenbraun's demeanor as a witness and views his testimony as impartial and highly credible.

Tiefenbraun testified that initially, on the basis of telephonic instructions from Edelson to design a symmetrical fan pattern, and subsequently on the basis of a montage or "mock-up" of the desired design that Edelson had sent to him (deft.'s exh. 8), Tiefenbraun made several sketches of a proposed design. These sketches were then narrowed down to two sketches of a fan design (deft.'s exh. 22) that formed the basis for Westchester's 3058 style lace.

Tiefenbraun further noted that prior to 1981 he had created a [*37] fan pattern for another client; that at the time he was working on a fan design for Edelson, he had never seen Klauber's 2785 lace; and that he did not even know of the existence of Klauber's 2785 fan pattern until November 3, 1988, shortly before trial (Tr. 150, 152, 178). The court is convinced from Tiefenbraun's highly credible testimony that he did not copy Klauber's 2785 design.

Mr. Edelson also testified concerning the genesis of Westchester's 3058 lace. A customer, BRA-TIQUE, sent him a sample of Klauber's 2782 design [10] and requested that he "replace" it. However, BRA-TIQUE did not request that Edelson copy Klauber's design and did not even suggest any criteria to Edelson for the replacement design. Nevertheless, Edelson understood that the replacement lace had to be 1-1/2 inches in width -- the same width as Klauber's 2782. The sample 2782 lace sent by BRA-TIQUE to Edelson was not forwarded to Tiefenbraun -- only the montage was sent to him. Neither of the two components of the montage was taken from the 2782. Moreover, in describing to Tiefenbraun the lace design he had in mind, Edelson did not describe the sample of the 2782 received from BRA-TIQUE, except he instructed [*38] Tiefenbraun, "it's important that we have more bright yarn, that is something that is very hot right now" (Tr. 212).

Edelson further explained that bright yarns have been used in the lace trade since 1959 and that repeating fan patterns are not new in the lace business, but have been commonly known for many years. Examples of such repeating fan pattern laces are illustrated by defendant's exhibits 14 and 15. Edelson further testified that it was Tiefenbraun's idea to put a three leaf design between the fans, to have one fan per repeat, and to use a fan with a central spine with ribs coming off of the central spine.

Plaintiff's design 2182 (plft's exh. 6; deft's exh. 6) and defendant's design 1534 (plft's exh. 8; deft's exh. 12) (see Appendix B) comprise alternating cross-leaves and flowers, which concept is "quite common" in lace design (Tr. 83). Defendant's exhibits 20, 21, 23, 24 25, 26 and 27 illustrate laces with alternating flowers and cross-leaves that have been on the lace market for many years, some as long as fifty years. In point of fact, Westchester's [*39] design number 400 (deft's exh. 21),

---

[10] As previously pointed out in fn. 9, Klauber's 2785 and 2782 designs are one and the same, except for the width of each lace.

comprised of flowers and cross-leaves, have been sold by Westchester since 1963.

Westchester's 1534 was designed by Tiefenbraun, who combined old flower and leaf designs which he had already possessed. The flower in 1534 is an old rose petal flower design going back to the '70s which Tiefenbraun had used for another client and the leaf design was also "nothing new" (Tr. 174). Tiefenbraun testified *convincingly* that "there are hundreds of rose petals around" (Tr. 154), and that he was not aware of and had not seen Klauber's 2182 design until November 3, 1988, shortly before the trial (Tr. 154). In Tiefenbraun's opinion, the flower in Westchester's 1534 lace is "totally different" from that in Klauber's 2182 lace and "there is nothing in these two flowers in my opinion that looks the same except that they are round" (Tr. 154-55). In short, Tiefenbraun opined, "there is no true similarity" between 2182 and 1534 despite they are in the same category, and that there is nothing in the patterns of the two designs to suggest that one was derived from the other (Tr. 169-70).

Comparing 2182 with 1534, Edelson pointed up the following differences: the **[*40]** flower in 1534 is smaller and more rounded; the 2182 flower is open while the 1534 flower is closed as if it had not bloomed; the 2182 flower has a bud in the upper right-hand corner while the 1534 has a bud in the lower left-hand corner; and the 2182's repeat is larger than that of the 1534.

Westchester first produced and sold 1534 lace in 1985, but Edelson saw 2182 for the first time in 1987 when he received a letter from plaintiff charging defendant with infringing plaintiff's copyright on 2182. Thus, when Tiefenbraun designed 1534 neither he nor Edelson was aware of 2182 and hence they did not copy Klauber's design.

The parties' designs in question, while utilizing similar *concepts* that are common in the lace industry, have significantly different elements and appearance. Moreover, the evidence clearly establishes that neither the *concept* of alternating shells and flowers, nor the *concept* of alternating flowers and cross-leaves is new or original with Klauber (Tr. 209, 217-223, deft's exhs. 21, 23, 24, 25, 26, 27). [11] Although the parties have utilized similar design concepts common in the lace industry, there is no actionable wrong in the use of similar concepts.

---

[11] Defendant does not question whether plaintiff's designs are sufficiently original to warrant copyright protection.

**[*41]** The controlling fundamental principle applicable in this case - there is no copyright infringement when only the idea, but not the expression, is copied - has been applied in numerous cases. Significantly, in *Mazer v. Stein, 347 U.S. 201, 217 (1953)*, the Supreme Court observed:

Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea - not the idea itself [footnote omitted]. Thus, in *Baker v. Selden, 101 U.S. 99*, the Court held that a copyrighted book on a peculiar system of bookkeeping was not infringed by a similar book using a similar plan which achieved similar results where the alleged infringer made a different arrangement of the columns and used different headings. The distinction is illustrated in *Fred Fisher, Inc. v. Dillingham, 298 F. 145, 151*, when the court speaks of two men, each a perfectionist, independently making maps of the same territory. Though the maps are identical, each may obtain the exclusive right to make copies of his own particular map, and yet neither will infringe the other's copyright. Likewise a copyrighted directory is not infringed by a similar directory which is **[*42]** the product of independent work. * * * *Absent copying there can be no infringement of copyright* [footnote omitted; emphasis added.]

*See also Walker, 784 F.2d at 48* ("In assessing claims of substantial similarity, courts * * * must decide 'whether the similarities shared by the works are something more than mere generalized ideas or themes'."); *Manes Fabrics Co. v. Miss Celebrity. Inc., 246 F. Supp. 975 (D.C.N.Y. 1965)* (even where defendant had utilized each of plaintiff's ideas with respect to a fabric pattern which had certain underlying similarities to plaintiff's design, the court found there was no infringement); *Condotti, Inc. v. Slifka, 223 F. Supp. 412 (D.C.N.Y. 1963)* (there was no infringement by defendant of plaintiff's textile design copyrights, notwithstanding that defendant sedulously borrowed each of plaintiff's ideas and then proceeded to make substantial deviations from plaintiff's expression of those ideas; defendant's designs were "aesthetic mutations, reflecting major changes and significant alterations that keep clear of plaintiff's expression"). Learned Hand commented in *Peter Pan Fabrics, 274 F.2d at 489*, "[o]bviously, no principle can be **[*43]** stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression'. Decisions must therefore inevitably be *ad hoc*."

baruch gottesman

Here, the design concepts utilized by the parties are sufficiently common in the lace industry, and the parties' expression of their ideas are sufficiently dissimilar that the independent genesis of their designs is entirely plausible. From the exhibits and credible testimony of record, the court finds that defendant did not copy plaintiff's lace designs.

*Conclusion*

*Plaintiff has failed to sustain the count in its complaint for breach of contract regarding defendant's manufacture and sale of its 1518 design lace commencing in 1985, since the letter agreement of January 20, 1983 was never a valid contract; and even assuming arguendo that the agreement was a valid contract, it became void under the terms of paragraph 4 by virtue of plaintiff's 1984 copyright infringement suit against defendant.*

Respecting the copyright infringement counts of the complaint, the court agrees with plaintiff's contention that its notice of copyright is reasonable in light of plaintiff's evidence that the method employed is the only one that is economically **[*44]** feasible. The court gives no weight to Edelson's testimony concerning the method of affixing notice to lace described by him since admittedly he never tried to use the method and evidently no one else in the industry uses it or affixes a notice on every yard of its copyrighted lace goods.

Defendant's contention that design 2785 is not owned by Klauber because it is not a "work made for hire" is not substantiated by the law, as enuciated in *Aldon,* or the record.

Nevertheless, plaintiff has failed to sustain the two copyright infringement counts in its complaint. The court finds no direct proof of copying by defendant. Moreover, no inference of copying may be made since, notwithstanding the parties' use of similar design concepts in their lace, there is no substantial similarity of the parties' designs considered as a whole. Absent copying, there can be no finding of copyright infringement.

For the foregoing reasons, the action is dismissed.

Dated: New York, N.Y., March 30, 1989

*APPENDIX A*





*APPENDIX B*

APPENDIX B

KLAUBER'S DESIGN 2182



WESTCHESTER'S DESIGN 1534



**End of Document**

baruch gottesman