UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KLAUBER BROTHERS, INC., | |
| Plaintiff, | No. 23 C 10407 |
| v. | Judge Thomas M. Durkin |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Klauber Brothers, Inc. filed this copyright infringement action against Defendants in connection with its lace designs. Defendant Dongyan Shengyu Electronic Commerce Co. moves to dissolve the preliminary injunction, quash service, and dismiss the complaint with prejudice. R. 99; R. 101. For the following reasons, those motions are denied.

**Background**

Klauber Brothers, Inc. ("Klauber") brought this suit against Dongyan Shengyu Electronic Commerce Co. ("Dongyan") and 99 other defendants alleging copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq. in connection with its lace designs. Klauber moved *ex parte* for a temporary restraining order ("TRO"), including an asset restraint and leave to serve the defendants via email. *See* R. 5. On September 26, 2023, the Court granted the motion, ordering Klauber to provide notice—including notice of the preliminary injunction hearing, service of process

1

pursuant to Federal Rule of Civil Procedure 4(f)(3), and any future motions—by electronically publishing a link to the complaint, the TRO, and other relevant documents on a website and sending an email with a link to that website to the defendants. *Id.* ¶ 8. The Court explained that "[t]he combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." *Id.*

After Klauber informed Amazon of the TRO, as ordered, Amazon notified Dongyan and the other defendants of the case number, the TRO, and Klauber's counsel's contact information. R. 110-1 at ¶ 4; R. 110-2. On October 4, 2023, Klauber received emails from both Dongyan and its counsel asking for information about the case. R. 110-1 ¶ 7; R. 110-3; R. 110-5. In response, Klauber sent Dongyan's counsel the unredacted complaint, motion papers for the TRO and the motion for leave to file under seal, screenshots of the Amazon webpages pertaining to Dongyan's alleged infringement, and a side-by-side comparison between Klauber's lace design and Dongyan's product. R. 110-1 ¶¶ 7, 8; R. 110-3. Klauber and Dongyan's counsel continued corresponding, and after Dongyan terminated counsel, Klauber corresponded directly with Dongyan. R. 110-3; R. 110-5.

On October 13, 2023, Klauber sent an email to Dongyan with a link to a website containing the complaint and summons, along with the TRO, the motion for the TRO, the memorandum and one of the two declarations in support of the motion for the

2

TRO, and the motion to seal. R. 100-4. A single summons was returned executed that day. R. 21. The same day, Klauber moved for a preliminary injunction, R. 24, and sent a separate email to Dongyan with notice of the motion for a preliminary injunction, attaching the motion papers and linking a website with unsealed docket entries. R. 110-6.

The Court held a telephone hearing on the motion for a preliminary injunction October 20, 2023, during which several of the defendants appeared, but Dongyan did not. R. 47. The Court set an in-person hearing on the preliminary injunction for October 25 and 26, 2023 for the appearing defendants and entered the preliminary injunction as to Dongyan and the other non-appearing defendants. On the second day of the in-person hearing, Dongyan appeared through counsel and sought to vacate the preliminary injunction. After considering the parties' arguments and closely examining the designs at issue, the Court kept the preliminary injunction in place. R. 86.

Dongyan now brings two motions. First, Dongyan moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), and 12(b)(6) and to quash service. R. 101; R. 102. Second, Dongyan moves to dissolve the preliminary injunction as wrongly entered due to lack of notice. R. 99; R. 100. The Court held a hearing on the motions, along with Klauber's separate motion to increase the amount of funds frozen, on December 19, 2023, during which a representative of Dongyan, Yiwei Zhang, testified. R. 155.

3

**Discussion**

I.    <u>Motion to Dismiss and Quash Service</u>

The Court begins with the motion to dismiss. Dongyan brings the motion on behalf of itself and all non-appearing defendants. Dongyan does so based on Klauber's single boilerplate allegation, on information and belief, that "each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment." R. 1 ¶ 24. As the Court stated at oral argument, counsel for Dongyan is not permitted to make arguments on behalf of defendants he does not represent. *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *4 n.3 (N.D. Ill. Sept. 5, 2018) (declining to consider arguments raised by appearing defendant on behalf of co-defendants in copyright infringement case where counsel had not appeared on behalf of those co-defendants) (citing 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel[.]"); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) ("[I]t is clear that an individual may appear in the federal courts only pro se or through counsel.")). Additionally, as Dongyan acknowledges, the Court has no obligation to consider its motion as an amicus curiae brief in favor of dismissal as to all defendants. Accordingly, the Court considers Dongyan's motion to dismiss as to Dongyan only.

Dongyan seeks dismissal under Rules 12(b)(2), (4) and (5) for improper service. It also seeks dismissal under Rule 12(b)(3) for improper venue and under Rule

12(b)(6) for failure to state a claim. For the reasons that follow, none of those challenges have merit.

### A. Service of Process

#### 1. Hague Convention

At the start, Dongyan argues that email service is improper under the Hague Convention. "The Hague Service Convention governs the service of process of civil matters among citizens of signatory nations in an attempt to give litigants a reliable, efficient, and standardized means of international service." *Oakley, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, No. 20-CV-05049, 2021 WL 2894166, at *4 (N.D. Ill. July 9, 2021). The Convention does not apply if a defendant's address is "not known." *Id.* (citing Hague Service Convention Art. 1, 20 U.S.T. 361). But before courts will accept that a defendant's address is "not known," the plaintiff must make reasonably diligent efforts to ascertain and verify the defendant's mailing address. *Id.* (citations omitted).

Klauber states that it did not know Dongyan's address because Dongyan was using a pseudonym, RMSWEETYIL, on Amazon and in communications with Klauber after it had been served. There is some evidence in the record that Klauber investigated Dongyan's address. *See* R. 5-9 at ¶ 9 (affidavit by Klauber's counsel stating that "Past investigation and discovery of online marketplace accounts reveals that Defendants appear to have provided false physical address information to the online platforms[.]"). Assuming for the sake of argument that Klauber failed to

5

conduct the diligence required and thus the Convention applies, that does not necessarily mean service was improper.

Rule 4(f)(3) allows service of an individual in a foreign country "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Service pursuant to Rule 4(f)(3) is appropriate when, for example, "there is a need for speed that cannot be met by following the Hague Convention methods, when the Central Authority of the foreign country has refused to serve a particular complaint (perhaps based on its own public policy or substantive law limitations), or when a foreign country's Central Authority fails to effect service within the six-month period provided by the Hague Convention." 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.). Here, the Court permitted Klauber to serve the defendants via email pursuant to Rule 4(f)(3). Dongyan acknowledges the Court's order, but makes a variety of arguments about why it was wrongly entered. None of those arguments carry the day.

Dongyan first contends that the Convention prohibits service by email on Chinese defendants. The overwhelming majority of courts in this district have held to the contrary. *See NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021), *aff'd sub nom. NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) (citing cases). Indeed, this Court reached the same conclusion in *Hangzhou Chic Intelligent Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3–4 (N.D. Ill. Apr. 1, 2021). Dongyan urges this Court to adopt the reasoning of *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382

6

(S.D.N.Y. 2022), and an amici curiae brief filed in that case, instead. With respect, the Court stands by its analysis in *Hangzhou* and declines to do so.

Dongyan also claims that Klauber was required to attempt service through the Convention before seeking leave to effect service by other means. But there "is no indication of a hierarchy in the text or structure of Rule 4(f)." *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). As such, the Rule "does not require a party to attempt service under the Convention before seeking a court order directing alternative service." *See NBA Properties*, 549 F. Supp. 3d at 796. That Klauber did not first attempt to serve Dongyan through the Convention does not render service improper.

Dongyan further argues that service by email was not appropriate because there was no "need for speed." As an initial matter, the decision of whether to allow alternative service under Rule 4(f)(3) is committed to the "sound discretion of the district court." *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) (citations omitted). And courts have routinely found service by email warranted in circumstances similar to this case. *See, e.g.*, *NBA Properties*, 549 F. Supp. 3d at 797 ("A speedy method of service in this case was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable."); *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021) (holding that service by email of defendants in China was proper in trademark infringement case). As such, the Court's order allowing email service pursuant to Rule 4(f)(3) was appropriate.

2. Summons

Next, Dongyan attacks the summons itself. Dongyan faults Klauber for not issuing a separate summons for each defendant and not listing all of the defendants in the caption. But the Court expressly directed the Clerk of the Court to issue a single summons for all defendants. *See* R. 11 ¶ 8 ("The Clerk of the Court is directed to issue a single original summons in the name of '[FIRST DEFENDANT] and all other Defendants identified in the Complaint' that shall apply to all Defendants."). Indeed, Rule 4(b) contemplates a single summons "addressed to multiple defendants." *See* Fed. R. Civ. P. 4(b). Further, the caption of the summons properly identified Dongyan by reference to Schedule A, which was separately filed on the docket on the same day as the complaint. *See* R. 4-4. That formatting does not run afoul of Rule 10, which relates to "pleadings," not the summons. *See* Fed. R. Civ. P. 10(a). Instead, Rule 4(a)(1) requires that a summons "name . . . the parties," Fed. R. Civ. P. 4(a)(1), which is precisely what the summons did here.

3. Proof of Service

Dongyan further claims there is no proof of service. Under Rule 4(l), service via alternative means under Rule 4(f)(3) must be proven "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(l)(2)(B). Here, as stated, Klauber provided service of process via email in the exact manner this Court ordered. In fact, that email was attached to Dongyan's motion papers. *See* R. 100-4. Klauber filed proof

8

of that service in the form of a signed return of service, which listed Dongyan's email address. And Zhang testified that the email address belonged to him.

Dongyan claims that proof is insufficient because the website was unreachable through the "Great Firewall" of China. R. 100 at 7–8. The only evidence Dongyan offers in support of that claim is the output of three "tests" run by www.chinafirewalltest.co. *See* R. 44-3; R. 75-2. The Court is highly skeptical about the legitimacy of that website and its "tests." That skepticism is only exacerbated by what is noticeably missing from the record. There is no affidavit from Zhang or any other Dongyan representative attesting that they could not access the website. Zhang did not testify that he could not access the website. And Dongyan did not state at any point in its email communications with Klauber's counsel that it could not access the website. Without such evidence, the Court remains satisfied that the summons and complaint were delivered to Dongyan.

Dongyan also argues there is insufficient proof of service because the website did not include one of the two sealed declarations that were filed with the motion for the TRO. But even if that were the case, it bears no relation to whether there was proof of service, which requires delivery of the summons and complaint. *See* Fed. R. Civ. P. 4(l)(2)(B). The Court is satisfied by the record that Dongyan received the summons and complaint.

### 4. Invalid Service

Dongyan contends service was invalid because there was no Chinese translation, no confirmation that the email did not "bounce back," and the email was

9

not sent six times. Beginning with translation, Dongyan has not cited any authority establishing that such a requirement exists. Instead, Dongyan relies on cases where courts, acting in their discretion and based on the circumstances, ordered that a translated notice be provided. *E.g.*, *Langford v. Juárez Cartel, et al.*, No. 1:20-cv-00132 (D.N.D. Oct. 28, 2020) (requiring notice of alleged cartel members via publication of Spanish notice in national newspaper); *Mwami v. U.S., et al.*, No. 1:99-cv-00125 (D.D.C. Aug. 2, 1999) (requiring service of Osama bin Laden via publication of Arabic notice in international newspapers). Here, the Court did not require Chinese translation, so Klauber was under no obligation to provide it. Moreover, Dongyan has not offered any evidence that it was unable to understand the email with service of process, or any other email sent by Klauber. Indeed, Dongyan corresponded with Klauber in English. *See* R. 110-5.[1]

Dongyan likewise has not supplied any authority that email service is invalid without confirmation that the email did not "bounce back." Instead, it cites cases where courts looked to the lack of "bounce back" as evidence that the email address was valid and the email was delivered. *See, e.g.*, *Chanel, Inc. v. Qi*, No. C-11-0362 CRB, 2011 WL 13244512, at *2 (N.D. Cal. Jan. 27, 2011). There is no question that

---

[1] Dongyan filed a motion in limine to preclude the admission of its emails with Klauber's counsel under Federal Rule of Evidence 408 because they are settlement negotiations and irrelevant. R. 154. But the fact that Dongyan directly communicated with Klauber bears on whether and when it had notice of this suit. And Rule 408 only pertains to evidence of settlement discussions "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction . . . about the claim." Fed. R. Evid. 408. That is not the purpose for which Klauber is offering the emails here. The Court thus considers the emails in ruling on the present motions, and denies Dongyan's motion in limine.

Dongyan's email address was valid and Dongyan received the email with service of process here. Zhang testified that the email address to which Klauber sent the email belonged to him. Dongyan's inclusion of that email with its own motion makes this argument all the more perplexing.

Moreover, Dongyan cites no support for the proposition that service is invalid without Klauber sending the email six different times. It argues that such service would be "consistent with how service by publication often require six (6) printings over a number of weeks." R. 102 at 11. Comparing service by sending an email to an individual email address that indisputably belongs to the defendant to service by publishing a notice in a newspaper where the defendant may be among hundreds of thousands of readers defies logic.

In all, because none of Dongyan's arguments related to service of process has merit, the Court denies the motion to dismiss and quash service on that basis.

B. Venue

Dongyan also moves for dismissal for improper venue under Rule 12(b)(3). For copyright cases, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400. A defendant is deemed to reside in any district where they are subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2).

That provision applies here. Klauber alleges that each defendant targets consumers in the United States, including in Illinois, through its online store; that Illinois residents can purchase allegedly infringing products through that online store; and that each defendant has targeted sales from Illinois residents. R. 1 ¶¶ 8,

11

16. Dongyan urges the Court to disregard these "self-serving allegations." R. 127 at 9. But in ruling on a motion to dismiss for improper venue, the Court takes all the allegations in the complaint as true unless contradicted by the defendant's affidavits. *Malibu Media, LLC v. Doe*, No. 18 C 450, 2018 WL 6446404, at *2 (N.D. Ill. Dec. 10, 2018). And here, none of the affidavits supplied by Dongyan have any information about whether or not it targets or sells to consumers in Illinois, or anywhere else. *See* R. 110-1; R. 130. Further, Dongyan's argument that venue is improper because service was never perfected is unavailing for the reasons previously explained.

Because the Court finds venue proper under 28 U.S.C. § 1400, the Court need not consider whether venue is also proper under 28 U.S.C. § 1391(b). Accordingly, the Court denies Dongyan's motion to dismiss for improper venue.

### C. Failure to State a Claim

Dongyan lastly moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6). A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

12

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

Here, Klauber brings claims against Dongyan for copyright infringement, which has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Klauber alleges that it owns a valid copyright for each of the designs at issue and that each defendant sells products through its store that reproduce or incorporate the design. R. 1 ¶¶ 45, 47. Dongyan faults the complaint for making broad allegations about how the infringement occurred, rather than specific allegations as to each defendant. But the complaint sets out with adequate specificity how the named defendants, which include Dongyan, infringed on the copyrights at issue. In addition, the complaint not only identifies Dongyan as one of the defendants by its business name and seller ID, but also identifies Dongyan's allegedly infringing products by their Amazon Standard Identification Numbers. *See* R. 4-3; R. 4-4. Those allegations are more than sufficient to provide Dongyan with fair

13

notice of the claims against it and the basis for them. *See Twombly*, 550 U.S. at 555. For those reasons, the Court denies Dongyan's motion to dismiss for failure to state a claim.[2]

## II. Motion to Dissolve Preliminary Injunction

Dongyan also moves to dissolve the preliminary injunction due to lack of notice. As a preliminary matter, for the reasons stated with respect to the motion to dismiss, the Court will not consider the motion to dissolve the preliminary injunction as to any defendant except the defendant who filed it, Dongyan.

Moving to the merits, Rule 65 provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Here, Klauber gave notice of the motion for a preliminary injunction by sending an email to Dongyan that attached the motion papers and linked a website with unsealed docket entries. That was consistent with this Court's order permitting electronic service. While Dongyan complains that the website did not include one of the two sealed declarations filed in support of the motion for the TRO, Dongyan had already received the unredacted complaint, TRO, screenshots of the Amazon webpages with the alleged infringement, and a side-by-side similarity analysis. Dongyan also argues that it could not access the website in China. But even if that were the case, Klauber directly sent the motion papers to Dongyan as email

---

[2] In its reply brief, Dongyan appears to argue that joinder is not proper. R. 127 at 3–4. Because that argument was raised for the first time in its reply brief, the argument is waived, and the Court will not consider it. *Laborers' Pension Fund v. W.R. Weis Co.*, 879 F.3d 760, 768 (7th Cir. 2018) ("Our standard is clear: Arguments raised for the first time in a reply brief are waived.")

14

attachments. *See* R. 110-6. Dongyan cannot fairly claim that it did not have notice of the substance or grounds of the motion for a preliminary injunction.

Yet, while Klauber gave notice to Dongyan that it had filed a motion for a preliminary injunction, that notice did not indicate the date or time of the hearing on the motion. To be sure, as of the date that Klauber gave notice of the motion, the Court had not set the telephone hearing or the in-person hearing on the motion. *See* R. 27 (October 16, 2023 order setting telephonic motion hearing for October 20, 2023). But Klauber never informed Dongyan about the October 20 telephonic motion hearing or the October 25–26 in-person motion hearing. *See* R. 162; R. 164. Further, the notice Klauber sent said that the defendants had 14 days (until October 27) to respond to the motion, which was after the in-person hearing. *See* R. 110-6.

Even so, Dongyan had an opportunity to be heard at the in-person hearing by new counsel on the merits of the preliminary injunction. As such, the lack of notice of the hearing does not warrant disposing of the preliminary injunction altogether. At most, Dongyan is entitled to any damages incurred during the six days between when the preliminary injunction order was entered as to Dongyan and the date counsel for Dongyan appeared.

Dongyan also submits that the preliminary injunction should be dissolved because there is no irreparable harm. The Court already considered that factor in upholding the preliminary injunction at the hearing and held that it tipped in favor of Klauber. *See* R. 86. In any case, the irreparable harm to Klauber is clear. If defendants like Dongyan are allowed to carry on selling the allegedly infringing

15

products, there is some likelihood Klauber's current and future textile company customers will turn to the defendants' lower-cost products, or that those "knock-offs" would saturate the marketplace. This would undermine Klauber's business by interfering with its ability to compete, tarnishing its reputation, and diminishing the value of its designs. *See Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (upholding preliminary injunction where district court found plaintiff "had some likelihood of proving irreparable harm stemming from the loss of goodwill and reputation"); *see also Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *3 (N.D. Ill. Nov. 23, 2022) (adequate showing of irreparable harm where plaintiffs showed "potential harm to goodwill, reputation, brand confidence, [and] potential lost market share"). For those reasons, the Court denies Dongyan's motion to dissolve the preliminary injunction.

## Conclusion

For the foregoing reasons, the Court denies Dongyan's motion to dismiss and quash service and motion to dissolve the preliminary injunction. To the extent Dongyan seeks damages for the six-day period during which the preliminary injunction was entered without notice of the hearing, the parties must contact the Court within 14 days to schedule a hearing. Additionally, the parties must jointly submit a proposed agreed discovery schedule to the Court by or before January 26, 2024.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: January 17, 2024

17